# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONNA SUE DOWTON, <br><br> Plaintiff <br><br> v. <br><br> EQUITY LIFESTYLE PROPERTIES, INC., et al., <br><br> Defendants | CIVIL ACTION NO. 3:16-CV-659 <br><br> (MEHALCHICK, M.J.) |

## MEMORANDUM OPINION

Before the Court is the motion of Defendant, Equity LifeStyle Properties, Inc., to stay proceedings and to compel arbitration of the contractual defense and indemnity provisions that arise under the contractual agreements between the parties, pursuant to 9 U.S.C. § 1, *et seq.* (Doc. 36). This matter having been fully briefed, it is ripe for disposition. For the following reasons, the Court will GRANT IN PART and DENY IN PART Defendant's motion.

**I. BACKGROUND AND PROCEDURAL HISTORY**

This diversity action was initiated on or about February 8, 2016 by Plaintiff, Donna Sue Dowton ("Dowton"), for injuries she allegedly suffered when she was involved in a physical altercation with another camper, Defendant, Yeandy Acevedo ("Acevedo"), at a campground ("Timothy Lake Resort") located at 2043 Allegheny Lane, East Stroudsburg, PA. (Doc. 1). Defendant Equity LifeStyle Properties, Inc. ("ELP") is a holding company that does not directly own or manage property. ELP owns a majority interest in MHC Operating Limited Partnership that manages the Timothy Lake Resort and is the sole member of MHC Timothy Lake North GP, L.L.C., the general partner of MHC Timothy Lake North Limited Partnership that owns the Timothy Lake Resort. Timothy Lake Resort is a mountain resort and

campground that provides members the right to use campsites on its property pursuant to a written contractual agreement and membership rules.

On or about March 29, 2014, Scott and Donna Dowton executed an Agreement for Use of RV Site, specifically site no. 247, at the Timothy Lake resort for $1,979.00 for a term from May 1, 2014 to April 30, 2015. (Doc. 36-4). In accordance with the 2014 Contract, on or about March 29, 2014 the Dowtons paid the $1,979.00 annual fee. (Doc. 36-5). After the 2014-2015 season, ELP purports that the Dowtons elected to renew their annual membership, but has only produced a copy of a contract unsigned by the Dowtons. (Doc. 36-6). However, ELP has produced evidence of payment for the 2014-2015 season. (Doc. 36-7).

The 2014 and 2015 Agreements for Use of RV Site contain identical provisions regarding arbitration and indemnification. Specifically, those provisions are as follows:

> **Arbitration.** Any dispute or claim arising out of this Agreement shall be settled by binding arbitration in accordance with the provisions of the Federal Arbitration Act (99 U.S.C. Section 1 et seq.) and the rules of the American Arbitration Association. Arbitration proceedings shall be commenced by the delivery by either party to the other of written notice demanding arbitration … Any award rendered by arbitration shall be shall be final and binding on the parties and judgment thereon may be entered by any court of competent jurisdiction.
>
> (Doc. 36-4, at 10; 36-6, at 10).
>
> …
>
> **Indemnification.** The Company is not liable for injury to any person, or for loss or damage to any property (including Members' property) occurring in or about the Site from any cause whatsoever. Members agree to jointly and severally indemnity the Company against and hold the Company harmless for any and all loss, damage, liability and expense (including reasonable attorney fees and other costs incurred in connection with defending any claim) resulting from any actual or alleged injury to any person … arising out of the use of the Site by Members, or caused by or resulting from any act or omission of any third party (including criminal acts) or any act or omission of the Company occurring in or about the Site, unless due to the Company' gross negligence or willful misconduct. The

indemnification provided for in this Section 19 shall survive the expiration or sooner termination of this Agreement.

(Doc. 36-4, at 9; 36-6, at 9).

Dowton does not dispute the existence of these clauses, and admits that the Indemnification clause pertains to "injury to any person, or for loss or damage to any property ... occurring in or about the Site from any cause whatsoever." (Doc. 38-2, at 2). Members are to indemnify Defendant and hold it harmless for "any and all loss, damage, liability and expense." (Doc. 38-2, at 2). The Indemnification clause is stated to even extend to acts and omissions by third parties, criminal acts, and even acts of Defendant occurring in or about the Site. (Doc. 38-2, at 2). The Arbitration clause pertains to "[a]ny dispute or claim arising out of this Agreement." (Doc. 38-2, at 2).

In accordance with the Arbitration clauses, on June 29, 2016, written demand was made upon Dowton and Acevedo for defense and indemnification pursuant to the contract language, and in the alternative, if the contractual dispute could not be resolved, for arbitration of the dispute with the American Arbitration Association. (Doc. 36-9; Doc. 36-10). Nothing before the Court indicates that either Dowton or Acevedo ever responded to the demand for indemnification and arbitration.

On September 15, 2016, ELP filed a Motion to Stay and to Compel Arbitration (Doc. 36), and filed its brief in support on September 16, 2016. (Doc. 37). Dowton filed a brief in opposition to the motion on September 29, 2016. (Doc. 38).[1] ELP filed a reply brief on October 6, 2016. (Doc. 39). In opposing the motion to compel arbitration, Dowton submits that the motion should be denied because (1) the arbitration clause pertains to contractual disputes and

---

[1] Defendant Acevedo has not responded to the motion.

not claims pertain to personal injuries resulting from ELP's negligence and carelessness, and the indemnification clause discussing such injuries violates public policy and is an unconscionable and unenforceable exculpatory clause; and (2) the subject 2015 agreement was unsigned by Plaintiff, and therefore cannot be said to demonstrate Plaintiff's intent to be subject to the arbitration and indemnification clauses.

## II. DISCUSSION

The initial question of arbitrability—*i.e.*, whether or not the parties validly agreed to arbitrate—is presumed to be a question for the court unless the parties clearly and unmistakably indicate otherwise. *Briggs v. Macy's Inc.,* No. CV 3:16-0902, 2017 WL 590274, at *2–3 (M.D. Pa. Feb. 14, 2017); *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013). In *Guidotti*, the Third Circuit Court of Appeals clarified the appropriate standard of review to be applied to a motion to compel arbitration filed before the completion of discovery. This clarification was needed due to conflicting precedent using the standard under Federal Rule of Civil Procedure 12(b)(6) applied to motions to dismiss as compared to precedent using the standard under Federal Rule of Civil Procedure 56 applied to motions for summary judgment. *Guidotti*, 716 F.3d at 771. The Third Circuit determined that this conflict was premised on the competing purposes of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, governing arbitration versus the values underlying contract interpretation more generally. *Id.* at 773. While the FAA "calls for a summary and speedy resolution of motions or petitions to enforce arbitration clauses," enforcement of the private agreement between the parties is also an important consideration. *Id.* (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983)). "Accordingly, '[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be express, unequivocal agreement to that effect.' " *Id.*

at 773 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)) (alteration in original).

The Third Circuit in *Guidotti* held that where the affirmative defense of arbitrability is apparent on the face of the complaint or those documents relied upon in the complaint, the standard under Rule 12(b)(6) should be applied. *Id.* at 773–74. In those cases, the FAA would favor speedy resolution without the delay of discovery. *Id.* "[A] more deliberate pace is required" when either (1) the complaint and documents referenced therein do not establish with "requisite clarity" that the parties agreed to arbitrate or (2) "the opposing party has come forth with reliable evidence that is more than a 'naked assertion … that it did not intend to be bound,' even though on the face of the pleadings it appears that it did." *Id.* at 774 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp.2d 474, 479 (E.D. Pa. 2011) and *Par-Knit Mills*, 636 F.2d at 55).

When the issue of arbitrability is not apparent on the fact of the complaint, "the motion to compel arbitration *must* be denied pending further development of the factual record." *Id.* (emphasis added). When the issue of arbitrability is apparent on the face of the complaint but the non-moving party has come forward with evidence to place the question in issue, the motion should be resolved according to the standard provided in Rule 56. *Id.* "Under either of those scenarios, a restricted inquiry into the factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant *must* be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Id.* (emphasis added) (internal citations and quotations omitted). "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at 776.

Several courts within this district have denied motions to compel arbitration and ordered limited discovery where the issue of arbitrability was not apparent on the face of the complaint, properly applying *Guidotti*. *See, e.g., Reaser v. Credit One Financial*, No. 3:15-CV-1765, 2016 WL 245541, at *3 (M.D. Pa. Jan. 21, 2016) (Caputo, J.); *Potts v. Credit One Financial*, No. 3:15-CV-1119, 2016 WL 225678, at *5 (M.D. Pa. Jan. 19, 2016) (Nealon, J.) (allowing sixty (60) day limited discovery on the issue of arbitrability); *Rajput v. Credit One Financial*, No. 1:15-cv-00807, 2015 WL 8012938, at *3 (M.D. Pa. Dec. 12, 2015) (Kane, J.).

As stated above, Dowton submits that this Court should not compel arbitration in this dispute, averring that the injuries claimed in this case do not fall within the scope of the agreement, and that the only clause discussing personal injury is violative of public policy and is unconscionable and unenforceable, and further that there is a dispute as to Dowton's intent to be subject to the 2015 arbitration and indemnification clauses. The Court addresses these arguments below.

    A. <u>THE ARBITRATION AND INDEMNIFICATION CLAUSES ARE VALID AND BINDING, AND APPLICABLE TO THE INJURIES CLAIMED IN THIS MATTER.</u>

Dowtown submits that the parties' dispute does not fall within the substantive scope of the agreement, as her allegations sound in tort and there are no provisions regarding injury, tort, or liability except for the indemnification provision. She further submits that extending the arbitration clause to tort claims would be unconscionable. (Doc. 38-2). Finally, Dowton submits that the agreement is an adhesion contract, and therefore, absent specific language that the arbitration agreement would extend to injuries sustained on the camp site, it would be a miscarriage of justice to extend the agreement by implication and require that this matter be arbitrated. (Doc. 38-2, at 8).

In asking this Court to find that the Agreement's arbitration clause does not apply to the injuries claimed in this case, Dowton is asking the Court to consider the Agreement in piecemeal.[2] The Agreement's arbitration clause does not preclude arbitration of personal injuries; rather, it specifically states that it applies to "[a]ny dispute or claim arising out of this Agreement" which the Court construes, based on the plain language of the contract, as including any claims arising in tort, and addressed by the indemnification clause. A court must consider the entirety of a contract in ascertaining the parties' mutual intentions. *See* Restatement (Second) of Contracts § 202(2). In this regard, "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Friedlander v. Veneman*, No. 3CV-04-1649, 2007 WL 1120528, at *8 (M.D. Pa. Apr. 13, 2007); *citing* Restatement (Second) of Contracts § 203(a).

Dowton further submits that the indemnification clause (Doc. 36-4, at 9; 36-6, at 9) is an exculpatory clause that is unreasonable and unconscionable and therefore unenforceable. The Court disagrees. An exculpatory clause is valid if the following conditions are met: 1) the clause does not contravene public policy; 2) the contract is between parties relating entirely to their own private affairs; and 3) the contract is not one of adhesion. *Evans v. Fitness & Sports Clubs, LLC*, No. CV 15-4095, 2016 WL 5404464, at *3 (E.D. Pa. Sept. 28, 2016); *Topp Copy Prods., Inc. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993). A valid exculpatory clause is only enforceable if "the language of the parties is clear that a person is being relieved of liability for his own acts of negligence." *Id*. A waiver of liability violates public policy only if it involves "a matter of

---

[2] Dowton admits that "[i]f there was a disagreement about proper use of the campsite, payment of fees, sale of members RVs, or improvements to the camp site, provisions clearly discussed under the agreement … the arbitration provision would apply." (Doc. 38-2, at 5).

interest to the public or the state. Such matters of interest to the public or the state include the employer-employee relationship, public service, public utilities, common carriers, and hospitals." *Seaton v. E. Windsor Speedway, Inc.*, 582 A.2d 1380, 1382 (Pa. Super. Ct. 1990); *see also Kotovsky v. Ski Liberty Operating Corp.*, 603 A.2d 663, 665 (Pa. Super. Ct. 1992). The exculpatory clause at issue in this case does not contravene public policy because it does not affect a matter of interest to the public or the state. *See Kotovsky*, 603 A.2d at 665-66 (holding that releases did not violate public policy because "[t]hey were [in] contracts between private parties and pertained only to the parties' private rights. They did not in any way affect the rights of the public."). Thus, the exculpatory clause meets the first two prongs of the *Topp Copy* standard for validity.

The contract meets the third prong of the *Topp Copy* validity standard because it is not a contract of adhesion. Agreements to participate in "voluntary sporting or recreational activities" are not contracts of adhesion because "[t]he signer is a free agent who can simply walk away without signing the release and participating in the activity, and thus the contract signed under such circumstances is not unconscionable." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1190-91 (Pa. 2010). "The signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services, but merely governs a voluntary recreational activity." *Id.* The Agreement at issue here is not a contract of adhesion because it is a contract to participate in voluntary recreational activities. The Agreement does not relate to an essential service, and Dowton was free to engage in the activity, or not, as she wished. She was under no compulsion to do so. *See Chepkevich, supra*; s*ee also Hinkal v. Pardoe*, 133 A.3d 738, 741-2 (Pa. Super. Ct. 2016) (en banc), *appeal denied*, 141 A.3d 481 (Pa. 2016) (citing the "thorough and well-reasoned opinion" of the trial court, which

held that the plaintiff's gym membership agreement was not a contract of adhesion because exercising at a gym is a voluntary recreational activity and the plaintiff was under no compulsion to join the gym). The Agreement meets all three prongs of the *Topp Copy* standard for validity, and thus the exculpatory clause is facially valid.

Even if an exculpatory clause is facially valid, it is enforceable only if it clearly relieves a party of liability for its own negligence. *Evans v. Fitness & Sports Clubs, LLC*, No. CV 15-4095, 2016 WL 5404464, at *5 (E.D. Pa. Sept. 28, 2016). The following standards guide a court's determination of the enforceability of an exculpatory clause:

> 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing the immunity is upon the party invoking protection under the clause.

*Topp Copy*, 626 A.2d at 99.

While a contract must clearly convey a waiver of liability for negligence, "Pennsylvania courts have consistently held that exculpatory clauses may bar suits based on negligence even where the language of the clause does not specifically mention negligence at all." *Chepkevich*, 2 A.3d at 1193. The Agreement unambiguously establishes ELP's intent to relieve itself of liability for negligence, despite not specifically mentioning negligence. In pertinent part, the Agreement states that the parties agree to jointly and severally indemnify ELP against and hold ELP harmless for "any and all loss, damage, liability and expense… resulting from any actual or alleged injury to any person… arising out of the use of the Site by Members, or caused by or resulting from any act or omission of [ELP] occurring in or about the Site…" (Doc. 36-4, at 9; 36-6, at 9).

Based on the foregoing, the Court finds that the arbitration and indemnification agreements are valid and enforceable.

B. <u>THE SUBJECT 2015 AGREEMENT WAS UNSIGNED BY PLAINTIFF, AND THEREFORE CANNOT BE SAID TO DEMONSTRATE PLAINTIFF'S INTENT TO BE SUBJECT TO THE ARBITRATION AND INDEMNIFICATION CLAUSES.</u>

Even though the Court finds, however, that the arbitration and indemnification clauses are enforceable, Dowton still submits that she is not bound by the Agreement, as the only copy of the Agreement before this Court does not contain her signature. Dowton does not dispute that she paid the fees due under the Agreement, but avers that without a signature, she should not be bound by the arbitration agreement, which requires specific intent of all parties to arbitrate. (Doc. 38-2, at 5). In turn, ELP submits that Dowton's payment for the new term are evidence of her intent to continue the agreement, and further, that her failure to surrender her site at the end of the previous agreement's term makes her a hold-over tenant under §15 of the Agreement, and therefore still bound by the terms of the 2014 Agreement, including the arbitration clause. (Doc. 39, at 3).

 "Accordingly, '[b]efore a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be express, unequivocal agreement to that effect.' " *Id.* at 773 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)) (alteration in original).

As stated above, when the issue of arbitrability is apparent on the face of the complaint but the non-moving party has come forward with evidence to place the question in issue, the motion should be resolved according to the standard provided in Rule 56. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013)*.* A restricted inquiry into the factual issues is necessary to properly evaluate whether there was a meeting of the minds on the

agreement to arbitrate, and the non-movant *must* be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement. *Id.* (emphasis added) (internal citations and quotations omitted). "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at 776.

Although the issue of arbitrability is apparent on the face of the complaint here, Dowton has asserted that she did not intend to be bound by the arbitration provision of the 2015 Agreement, and as evidence at this juncture submits that she did not sign the 2015 Agreement. Despite evidence of intent by the parties, including the full payment of the fees due under the 2015 Agreement, and the use of the campground by Plaintiff, the Court is compelled by *Guidotti* to allow limited discovery on this narrow issue.[3] As such, the Court will grant thirty (30) days to allow the parties to conduct limited discovery on the narrow issue of whether Dowton intended to be bound by the arbitration clause. At the close of that thirty days, or before if discovery is complete, ELP may file a renewed motion to compel arbitration, which will be promptly reviewed by this Court under a motion for summary judgment standard. All other discovery is stayed for that period of time, and until such time as the Court decides the issue of arbitrability.

---

[3] The Court notes, however, that in ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter. *Ingrassia Constr. Co., Inc. v. Walsh*, 337 Pa.Super. 58, 486 A.2d 478, 483 (1984). Further, signatures are not dispositive evidence of contractual intent. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 584 (3d Cir. 2009); *see Commerce Bank/Pennsylvania v. First Union Nat'l Bank*, 911 A.2d 133, 145–46 (Pa.Super.Ct.2006).

### III. CONCLUSION

For the foregoing reasons, the motion (Doc. 36) of Defendant, Equity Lifestyle Properties, Inc., is **GRANTED IN PART and DENIED IN PART**. This matter shall be stayed pending the outcome of a decision on the issue of arbitrability. The motion to compel arbitration is denied, without prejudice to the filing of a renewed motion to compel arbitration following a brief period of time in which the parties should conduct limited discovery on the issue of the parties' intent to be bound by the arbitration clause in the 2015 Agreement.

An appropriate Order will follow.

**Dated: June 28, 2017**	*s/ Karoline Mehalchick*
	**KAROLINE MEHALCHICK**
	**United States Magistrate Judge**